UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 10 CIV. 9008

=========================================

CURTIS VAN STUYVESANT

                Petitioner

      vs.

ERIC HOLDER UNITED STATES
ATTORNEY GENERAL DEPARTMENT
OF JUSTICE, JANET NAPOLITANO
SECRETARY UNITED STATES
DEPARTMENT OF HOMELAND
SECURITY; DISTRICT DIRECTOR
IMMIGRATION AND CUSTOM
ENFORCEMENT NEW YORK CITY
DISTRICT OFFICE.

              Respondent(s)

Docket No.

ALIEN NO. A24-353-326

A PETITION FOR A WRIT OF
HABEAS CORPUS PURSUANT TO
28 U.S.C. 2241 EXECUTIVE
DETENTION

=========================================

## I.  JURISDICTION

1.  This is a Petition for a Writ of Habeas Corpus authorized by 28 U.S.C. Section 2241.  The United States District Court has jurisdiction to entertain a state prisoner's Habeas Corpus Petition, if the Executive Office for Immigration Review, final order of removal and 8 U.S.C. Section 1231 [a (10)], removal period and the Section 1231 [a, (6)], Six months Post -Removal - Period have expired.

## II. VENUE

2.  Venue in the United States District Court where Petitioner prosecuted and persecuted by the New York County District Attorney Office and where he was convicted in the New York Supreme Court for a non existing United States Constitutional Article III Federal Subject Matter, an alleged scheme to commit Immigration Fraud, which was a pretextual, selective, vindictive and malicious to trigger removal.  See, 28 U.S.C. Section 2244(d)

-1-

Petitioner has a Naturalization application <u>In re Van Stuyvesant v. Holder</u>, Docket No. 10-CV-1581 SDNY 28 U.S.C. 1651(a); Habeas Corpus, <u>Van Stuyvesant v. Conway</u>, Docket No. 03-CV-3856, SDNY Section 2254 Rule 6, FRCP Rule 11 and 60(b) Motion, and in the United States Court of Appeals for the Second Circuit, Real 10 Act, Judicial Review Rule 60(b) FRCP Motion to vacate. Docket No. 05-3275 (Lead); 05-3358 (Consolidated); and 05-4723 (Consolidated).

### III. <u>PETITIONER</u>

3. Petitioner Curtis Van Stuyvesant, is a Stateless Citizen and a National of the United States, granted permanent residence, political asylum and refugee status. He is a state prisoner under the custody of the New York State Department of Correctional Services, and currently detained in Attica Correctional Facility, 639 Exchange Street, Post Office Box 149, Attica, New York 14011-0149, on behalf of Immigration and Custom Enforcement detainer on the order of Immigration Judge Joe Miller, Executive Office for Immigration Review, Fishkill, New York, entered on December 12, 2003.

### IV. <u>RESPONDENTS</u>

4. The Respondents are Eric Holder, United States Attorney General, Department of Justice; Janet Napolitano, Secretary United States Department of Homeland Security; and The District Director Immigration and Custom Enforcement New York City District office.

### V. <u>FACTS</u>

5 The Question of Constitutional facts involved in this Petition are presented in the annexed affirmation in support. Petitioner realleges and incorporate by reference, his Petition for a Writ of Certiorari to the United States Court of Appeals for the Second Circuit.

-2-

Van Stuyvesant v. Gonzales, 2005 Term U.S. Supreme Court, 28 U.S.C. 2241; Petition for a Writ of Certiorari to the Second Circuit Van Stuyvesant v. Mackechine, 2005 Term U.S. Supreme Court 28 U.S.C 1651(a); Van Stuyvesant v. Gonzales, Second Circuit Docket No. 05-3275, 05-3358 and 05-4723; Van Stuyvesant v. Ashcroft, U.S. District Court W.D.N.Y. Docket No. 04-489sc.

## IV. LEGAL BASIS

6.   Section 2241 of Title 28 of the United States Code, authorize a United States District Court to issue a Writ of Habeas Corpus to a person held in custody in violation of the Constitution or Laws or Treaties of the United States.   Habeas Corpus prooceedings are available as a forum for statutory and constitutional challenge to the detention of aliens ordered removed from the United States.   In 1996 Congress combined Deportation and exclusion proceedings into a single proceedings.   See, Illegal Immigration Reform and Immigration Responsibility Act of 1996, Pub. L. 104-208, Section 304(a) 110 Stat 309-587, adding 8 U.S.C. 1229(a).

## VII. RELIEF

7.   The Fifth Amendment Due Process Clause protects against New York State Department of Correctional Services, New York Division of Parole and the New York County District Attorney Office illegal actions infringing fundamental liberty interest, no matter what process is provided, where the infringement is not narrowly tailored to serve state interest.   ICE removal results is from failure of I.N.S. to adjudicate nine (9) separate pre-paid applications for Naturalization from 1990 to 1998, when statutorily require I.N.S. fraudulent concealment is completing review until petitioner no longer "Statutory Eligibility" for relief stated that basis of a substantial constitutional Due Process Claim.

8.   The Supreme Court long line of equitable estoppel cases precluding the government from gaining an unfair advantage from wrongful acts, where the misconduct deprives a person of a constitutionally protected liberty or property interest, is supported by the evidence, that INS act willfully, wantonly, recklessly and negligently in concealing naturalization applications encompassed element of affirmative misconduct necessary to state equitable estoppel claim.

9.   The INS fraudulent concealment of a 1982 asylum and refugee award letter resulted in a 1986 retroactive award of permanent residence, challenge to retroactive Deportation laws, under the Ex Post Facto Clause, applies in this case, in the mandatory imposition penalty of removal, upon a pretextual criminal punishment, for a jurisdiction defective non criminal act.

10.  Petitioner removal has a particular and unjust feel to it; if removal under such circumstances is not punishment, it is difficult to envision what is.

11.  Petitioner is demanding the vacatur of ICE detainer.  Petitioner is demanding Naturalization to be made retroactive to 1990    Petitioner is demanding immediate release from ICE detention in state custody; Petitioner is not demanding a stay of ICE proceeding during the pendency of Federal Court litigations; Petitioner is demanding an injunction relief prohibiting New York County, City and State actions, actors or ICE from a 18 U.S.C. 1503 et. seq., criminal conduct.

WHEREFORE, Petitioner respectfully request that the relief prayed for be granted together with each other and further relief as to the Court deem just and equitable.

Dated: ᴺᵁᵛ ᵌ    , 2010.

-4-

Respectfully submitted,

Curtis Van Stuyvesant
Political Prisoner 99-A-4590
Attica Correctional Facility
639 Exchange Street
Post Office Box 149
Attica, New York 14011-0149

-5-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
============================================
CURTIS VAN STUYVESANT

                    Petitioner              Docket No.


            vs.

ERIC HOLDER UNITED STATES              ALIEN NO. A24-353-326
ATTORNEY GENERAL DEPARTMENT            AFFIRMATION IN SUPPORT OF
OF JUSTICE; JANET NAPOLITANO           A PETITION FOR A WRIT OF
SECRETARY; UNITED STATES               HABEAS CORPUS PURSUANT TO
DEPARTMENT OF HOMELAND                 28 U.S.C. 2241
SECURITY; DISTRICT DIRECTOR            EXECUTIVE DETENTION.
IMMIGRATION AND CUSTOM
ENFORCEMENT NEW YORK CITY
DISTRICT OFFICE.
============================================
STATE OF NEW YORK)
COUNTY OF WYOMING)

        I Curtis Van Stuyvesant being duly sworn deposes and says under the

penalty of perjury that:

1.  I am the petitioner and am proceeding Pro se.

2.  Petitioner is fully familiar with the Constitutional Question of fact and

law.

3.  This is a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. 2241

by a person held in custody in violation of the Constitution, or Treaties or

Law of the United States.

4.  The question intended to present to this Court is as follows:   (1)

Whether if Section 1231 of Title 8 U.S.C. applies to Petitioner; DHS can no

longer detain him because the section 1231(a)(1), Removal period and the

section 1231(4)(6), six months of Post Removal Period Detention have passed?

(2)  Whether where INS acted willfully, wantonly, recklessly, negligently and

fraudulently in concealing nine (9) separate alien applications prepaid

Naturalization from 1990 to 1998 encompassed elements of affirmative

misconduct necessary to state equitable estoppel claim?

                              -6-

(3)   Whether were petitioner was pretextually selectively vindictively and maliciously prosecuted for a non existing crime of Immigration fraud, fabricated from a whole cloth, by a County prosecutor to trigger Deportation, and if a non moral turpitude or aggravated felony, is procedural and substantial Due Process against Government action infringing fundamental liberty interest, no matter what process is provided where the infringement is not marrowly tailored to served a compelling state interes?  (4)  Whether ICE is permitted to aid local and state officials to violate Article III of the United States Convention against torture and other cruel, inhuman, or degrading treatment or punishment to protect those officials from criminal and civil liability, by Deporting a Stateless Citizen and National of the United States to a particular Country where aliens will face political death, even though he has no alienage to that particular Country?

5.   Presumably this Court and the Respondents have read the appendices and exhibits annexed by Petitioner to his 28 U.S.C. 1651(a) Petition currently under review by this Court and thus are familiar with the Constitutional facts and tortured procedural history of kafkaques type 14 years nightmare. See, Docket No. 10-CV-1581 SDNY (LAP))MHD).

6    The New York State actors have a very long open end sordid history of obstructing justice at every phase of Petitioner's inquisition, persecution, Grany Jury, Pre-trial, Trial, New York State Direct Appeal and Post-Conviction reliefs such as C.P.L. 440.10, C.P.L. 460.10, C.P.L.R. Article 70 Habeas Corpus, and Writ of Error Coram Nobis, Executive Clemency and Parole.

7.  Contamination by extraneous influence virus infected petitioner  E-0-1-R B-I-A, Second Circuit Real ID Acts, 28 U.S.C. 2241, 18 U.S.C. 1651(a),  in the United States District Court Second Circuit and the United States Supreme Court, and more

recently a Toxic Tort, Product Liability Toture Victim Protection Act, Alien Tort Claim Act, Constitutional Tort, 28 U.S.C. 2254, F.R.C.P. Rule 60(b), Rule 11 and section 2254 Rule 6 Motions.

8.   Immediately David Paterson became Governor of the State of New York, Assistant District Attorneys from New York County District Attorney Office alerted New York State Department of Correctional Services Commissioner, Deputy Commissioners and the Executive team at Collins Correctional Facility including the Executive Department, Division of Parole of the fact that Petitioner knows the Governor, his younger brother Daniel and father Basil Paterson socially. The Order was given to obstruct any application for Post-conviction relief including petition for Executive Clemency Pardon.

9.   Collins Correctional Facility Deputy Superintendent for Security gave the order to search petitioner's cube - cell every week. An investigator from their Inspector General Office was imported to search for newly discovered evidence received by petitioner in July of 2008.

10. Although the Federal Habeas Corpus process is used by petitioners to secure Judicial review of criminal convictions and sentence. The remedy is deemed to be "Civil" and its process are largely subject to the Federal Rule of Civil Procedure.

11. Accordingly, it has long been accepted that Federal Habeas Corpus petitioner can file "Motions for relief from Judgment" pursuant to Rule 60(b), which permits the filing of such a motion under a variety of circumstances, including the discoveries of New Evidence Rule 60(b)(2). Rule 60(b)(6), which provides for the filing of such a motion for "Any other reason justifying relief from the operation of the Judgement," has been recognized to grant the Federal Courts broad authority to relieve a litigant of a final judgment where such actions is appropriate to accomplish Justice."

-8-

12. The Supreme Court has interpretated expansively in accordance with the underlying purpose of bringing about just results as a grand reservoir of equitable power to do justice in a particular case.  See, Gonzales v. Sec. For The Department of Correction, 366 F.3d 1250, 1281 (CA 11 2004), aff'd sub nom Gonzales v. Crosby, 545 U.S. 524 (2005).  Since 2007 petitioner Second Circuit Rule 60(b) has been pending Real 1D Act.

13. There is no Constitutional Right to Parole.  See, Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 12 (1979).  In Greenholtz, the Court held that state prisoners do not have a constitutionally protected interest in receiving parole unless a parole statute contains mandatory language restrictions the parole boards discretion in making its decision. Id at 11-12.  See, N.Y. Executive Law.

14. Petitioner was compelled to attend his 2008 Parole Board.  The record is an incontrovertible proof supporting his claims that the boards was aware of the fact as were the State Attorney General and New York County District Attorney Offices that an application for Executive Clemency Pardon has been filed and pending before the Governor.  See, N.Y. Correctional Law Article II Sections 261, 262, 263, 264, 265, 266, 325.

15. J. Herman, Director, Executive Clemency, Division of Parole was ordered by former A.D.A. James Kindler and Anthony Annuci, former Counsel and Deputy Commissioner Department of Correctional to converted a petition for Pardon into Correctional Law Article 23 Section 703(a), 703(b); Executive Law Article 12B Section 259-a, 259-b, 259-c, petition for Executive Clemency was nullified and voided and regardless of the fact Petitioner 2008 appearance was not for the purpose of parole, the Executive Department Division of Parole stated it was and thus Pardon was forfeited.

16. During the pendency of Petitioner's 28 U.S.C. 2241 petition for a Writ of Habeas Corpus, in the United States District Court, WDNY, See, Docket No. 04-CV-0489, immediately Honorable Charles J. Siragusa, U.S.D.J., order staying Deportation was entered in 2004, Robert Morgenthau former District Attorney and James Kindler who is now a Bronx County Supreme Court Justice, who was his first Executive Assistant District Attorney, ordered the Division of Parole to offer petitioner conditional parole for Deportation only (CPDO). See, Ortiz v. New York State Department of Parole, 239 A.D.2d 52; 66 N.Y.S.2d 823 (4th Dept. 1998).

17. The Division of Parole refused to consider Executive Law Article 12B Section 259-r Medical Parole. See, Executive Law 32 Section 259-r(a)(b)(c) under subsection 2(a).

18. The Commissioner of Correctional Services also has the authority. See. subsection 2(b), 3, 4(a), (i), 5, 6, 7, 8, 9. Both the Executive Department Division of Parole, and the Department of Correction denied medical parole even though, petitioner was diagnosed with a Metastatic Prostrate, Bone and Soft Tissue Lower G-1 Organ Cancer, and was given 180 days to live, by Attica Prison Doctors, Jose Depiro et. al. and Eric County Medical Center Zale Berstein. See, Greenholtz, 442 U.S. at 11-12; Morrisey v. Brewer, 408 U.S. 471, 481 (1972); Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

19. Executive Clemency Pardon petition was nullified, Medical Parole not considered and a pretextual parole denied because the County and state actors wrongly assumed that Petitioner would capitalized on his social contact with David Paterson. Petitioner has a very strong allergic reaction and a pathology aversion for New York minority elected and civil rights officials and activist, because of their self serving opportunistic and hypocritical and brown nosing establishment mentality.

-10-

20. The N.Y. County District Attorney Office is aware of the fact that the Supreme Court has struck down the government's practice under the current statute of indefinitely detaining individual's who have been ordered Deported or Removed, but whom the Government is unable to Deport or Removed. See, Zadvydas v. Davies, 533 U.S. 678 (2001).

## POST REMOVAL DELAY

21. Nothing the serious Constitutional problem that would arise if the Immigration statute were read to permit indefinite or permanent deprivation of human liberty, the Court interpretated the statute to limit post order detention to a period reasonable necessary to bring about the detainee's removal from the United States for the sake of Uniform Administration in the federal court, the court stated that six month would be a presumptively reasonable period of detention to effect a detainee's removal from the Country.

22. If removal is not accomplished within this period, the court indicated that the individual should be released if it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. See, Clark v. Martinez, 543 U.S. 371 (2005); Oyzdeji v. Ashcroft, 332 F.Supp 2d 747 (M.D. PA 2004); see e.g., Shoken v. Thompson, 369 F.3d 865 (C.A. % 2004), regarding $500.00 as reasonable bond.

## 28 U.S.C. SECTION 2241

23. Rule 60(b) is relevance to the successive petition context is readily apparent if a Federal Habeas Corpus Petitioner has been denied relief in a first petition he conceivably could invoke Rule 60(b) to seek "Relief from [The Prior] Judgment" on the grounds of "Newly Discovered Evidence" or another "reason justifying relief." Indeed, the fit is so natural and logical that federal judge's inclined to curtail the availability of Federal Habeas Corpus relief have rushed to seal this avenue of relief.

-11-

24. A number of Federal Courts have declared as United States District Judge Kaplan allegedly did on December 16, 2008, and United States Magistrate Judge debra C. Freeman on March 15, 2010 have declared without such explanation for their reasoning that a Rule 60(b) motion filed by a Federal Habeas Corpus petitioner after denial of a prior petition will be deemed to be a successive petition subject to the usual restrictions on successive petition . See, Exhibit "A," United States District Judge Kaplan Order; Exhibit "B," United States Magistrate Judge Freeman Order.

25. However, the Second Circuit has recognized what is plainly evident from a fair reading of the rule...that there is no justification for treating a Rule 60(b) motion as a successive petition, subject to the restriction on such filing. See, Rodriguez v. Mitchell, 252 F.3d 191, 193 n.2 (C.A. 2 2001); See, e.g., Muniz v. United States, 236 F.3d 122, 128 (C.A. 2 2001)(per curiam).

26. Petitioner was alerted to the fact that his Section 2254, Rule 6 Motion and 1200 pages of Newly Discovered Evidence filed on November 24, 2008 was never subjected for review, Collins Correctional Facility Deputy Superintendent for Security received his order to confiscate and destroy all exculpatory Newly Discovered Evidence in petitioner's possession.

21. On December 28, 2008, one week after the filing of a Rule 59(e) motion on December 20, 2008, a pretextual disobeying a direct order was used as an excuse to confine petitioner in Special Housing Unit (S.H.U.), solitary confinement. See, Hudson v. Palmer, 468 U.S. 517, 529-30 (1984); See, United States v. Cihen, 796 F.2d 20, 22-24 (C.A. 2 1986). Disobeying a direct order is a garden variety infraction that normally carries a 15 days lost of privileges such as recreation, telephone and commissary.

-12-

28.   The seizure of exculpatory evidence proving petitioner's actual and factual legal innocence does not serve a legitimate institutional interest. See, Hudson, 468 U.S. at 528 n.8 at 530 n.9.  Petitioner is not a member of any prison gang,trafficker or user of narcotics, involved in the promotion of prison contraband or involved in prison advocacy that might have constituted a threat to security.  He is a loner who is aloof and does not socialize with prisoners or staffs or fraternize with prison staffs but he was subjected to a weekly cube/cell search to which known gang bangers, narcotic traffickers, users, gamblers and promoters of contraband were not subjected to that kind of treatment.

29.  Petitioner was brutally assaulted, seriously injured, sentenced to a 180 days solitary confinement, deprived of all privileges including access to the law library and Court's and transferred from a medium security medical facility to a maximum class A prison, and since 1999 he has been classified as C.M.C., the highest security classification, even though he was illegitimately convicted of a non existing garden variety white collar crime.

30.   The Eight Amendment protects prisoner's against cruel and unusual punishment during confinement.  See, Griswald v. Connecticut, 381 U.S. 479, 484 (1965); Turner v. Safley, 482 U.S. 78, 95, 97-99 (1987); Hutto v. Finney, 437 U.S. 678, 685 (1978); Wilson v. Setier, 501 U.S. 294, 297-303 (1991).

31.  A Phase I, II, and III clinical trial for terminal cancer patients that lasted 48 months in addition to the refusal to provide medical treatment for 72 months to cure the clinical trial adverse drug reaction (A.D.R.) involved the unnecessary and wanton infliction of pain.  The infliction of pain is totally without penelogical justification.  See, Hope v. Pelzer, 536 U.S. 730, 732 (2002); Blissett v. Coughlin, 66 F.3d 531, 537 (C.A. 2 1995).

-13-

32. The New York State Department of Correctional Services and the New York County District Attorney Office amended the illegal sentence imposed on July 7, 1999, by New York County Supreme Court Justice John Stackhouse to include a human clinical trial palliative medicine cancer treatment for terminally ill patients. See, Wilson, 501 U.S. at 299; Gatson v. Coughlin, 249 F.3d 156, 164-65 (C.A. 2 2001); gynacomastia is one of his (ADR) side effects injuries.

33. The state officials conduct that is not part of the formal penalty for a crime is a sufficiently serious deprivation and the state actors acted with a sufficiently culpable state of mind.

34. These deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basic of an 8th Amendment violation. See, Farmer v. Brennam, 511 U.S. 825, 838-42 (1994).

35. On February 22, 2010, the desperation of the state actors became very obvious when they decided to forge medical and psychiatric records to qualify petitioner by fraud for medical parole and it is a scheme that set the stage for murder which will be classified as suicide. See, Exhibit "C," Department of Correction January 16, 2010, false comprehensive medical summary. See, Exhibit "D," February 16, 2010, letter to Division of Parole Executive Director, Timothy O'Brien Exhibit "E," Division of Parole Deputy Director John Lowery, March 15, 2010 response. See, Harrison v. Barkley, 219 F.3d 132, 138 (C.A. 2 2000); See, e.g., Deshaney v. Winnebago County Department of Social Services, 489 U.S. 189, 199-200 (1999); Heling v. McKinney, 509 U.S. 25, 34-35 (1973) id. at 33.

36. The Fifth and Fourteenth Amendments prohibits the Government from depriving a prisoner of life, or property without Due Process of Law. See, Wolff v. McDonnell, 418 U.S. 539, 558 (1974), citing Dent v. West Virginia, 128 U.S. 114, 123 (1889).

37.  The New York State Department of Correctional Services Executive and Medical Officials are interferring with petitioner's protected liberty and property interest.  The First Amendment Petition Clause safeguards are constituonally sufficient to protect petitioner's Rule 60(b), in both 28 U.S.C. 2241 and 2254, in addition to his 28 U.S.C. 1651(a) against unjustified deprivation.  See, Kentucky Department of Correction v. Thompson, 490 U.S. 454, 460 (1989); Cruz v. Gomez, 202 F.3d 593, 597 (C.A. 2 2000); See, Exhibit "F," Time Computation Eligibility for a December 2011 Conditional Release (C.R.).

38.  Petitioner could not mechanically produce his objection to United States Magistrate Judge Debra C. Freeman's March 15 2010 report.  See, Exhibit "G." A self serving platitude from Ms. Maureen E. Boll, Deputy Commissioner, See, Exhibit "H," order entered by Judge Kaplan granting an enlargement of time. It is an unspoken rule that a prisoner should not file a grievance in Attica Correctional Facility, because it is counter productive, which will lead to retaliation.  The process is long and meaningless.  See, Exhibit"I," Southern District New York order requesting a mechanically produced brief dated August 3, 2009

39.  Petitioner was served with a letter dated April 13, 2010, from Immigration and Custom Enforcement, alerting him to the fact, that he has been granted Parole.  See, Exhibit "J," but this vaunted parole reaapearance was scheduled for May 2010.  See, Sadin v. Conner, 515 U.S. 472, 484 (1995); Taylor v. Rodriguez, 238 F.3d 188, 195 (C.A. 2 2000); Mathew v. Eldrige, 424 U.S. 319, 335 (1976).

-15-

40.   Since 1999 these cabal of xenophobic bigots and reprobates have subjected petitioner to psychological and physical torture human medical experiment over 60 months solitary confinement, severe injury including vision impediment, lower spinal cord and arm, denied him access to the courts and lawyer during his intermediate direct appeal. Protected liberty interest can be credited by the Due Process Clause of its own force, by court order, by treaty, or by states through statutes or regulations. See, Sadin, 515 U.S. at 483-84.   Petitioner is entitled to Naturalization retroactive to 1990. See, 8 U.S.C. 1427; See generally, 8 U.S.C. 1401-1441.

41.   Petitioner was granted Refugee Political Asylum and lawful permanent residence status in the United States.  See, 8 U.S.C. 1427(a)(1); 8 C.F.R. Section 3791 · from 1979 until his 1999 pretextual selective, vindictive malicious prosecution for a non existing crime of Immigration fraud, he showed and continue today to show good moral character.  See, 8 U.S.C. 1423(a); 1427(a)(3); cf.; 8 U.S.C. 1101(a)(42); See, e.g., Doherty v. United States Department of Justice, 908 F.2d 1108 (C.A. 1 1990), rev'd on other grounds, sub. nom.; See. I.N.S. v. Doherty, 502 U.S. 314, 116 L.Ed 2d 823, 112 S.Ct. 719 (1992); See, I.N.S. v. Stevic, 467 U.S. 407, 424, 104 S.Ct. 2487, 2497, 81 L.Ed. 2d 321 (1984).

42.   Regardless of the fact the Federal Judiciary seems to be of the mind that torture is a legitimate New York State penelogical interest, it violates Article 3 of the United Nations Convention against torture and other cruel inhumane or degrading treatment or punishment [in effect for the United States in 1994].

43.   The Convention does not include any bar based on a purported criminal record.   See, Foreign Affairs Reform and Restricting Act of 1998 Section 2242(c).   Interim regulation effective March 22, 1998.  See, 8 C.F.R. 208, 16(c) and for deferral See, 8 208, 17.

44. Ironically, petitioner was barred from exercising the right to consular access. This right is guaranteed under the Vienna Convention on Consular Relations. See, April 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261. Petitioner was told by both the New York County District Attorney and I.N.S. sub. nom. I.C.E. that as a Stateless Citizen who is a National of the United States with Refugee travelling with documents and reentry permit issued by the United States Government. He is not entitled to the Republic of South Africa Protection. See, 28 C.F.R. Section 50.5 and 8 C.F.R. Section 236, Priniz v. United States, 519 U.S. 979, 117 S.Ct. 430, 136 L.Ed 2d 329 (1996); See, Exhibit "K," The New York State Attorney General Office of Public Integrity Bureau April 8, 2010, letter, distancing Attorney General Andrew Cuomo from Corrections department, Division of Parole and New York County District Attorney and the Federal Judiciary and Executive branches illegal criminal and unconstitutional conduct. See, Department of State Notice for Law Enforcement Official on Detention of Foreign Nationls (October 1, 1992, See, 105.18 (1998)).

45. Apparently the only Vienna Convention on Consular Relations known by State and local officials is "Vienna Sausage" but see, Article 36(1) of the Vienna Convention.

46. It is very doubtful that these provincial xenophobia bigots and trailer park trash would have had the audacity to violate the First, Fourth, Fifth, Sixth, Seventh, and Fourteenth Amendments to the United States Constitution had it been petitioner has consular protection. See, United States Department of States Foreign Affair Manual, 7 F.A.M. 410, TL; CON 11, 10-30-84 Section 412, See, 7 F.A.M. 900 ID at 413.3, id. at Section 415, ID at Section 423; See, Heard v. Netherland, 949 F.Supp 1255 (E.D. VA 1996); Murphy v. Netherland, 116 F.3d 97 (C.A. 4 1997).

Faulder v. Johnson, 81 F.#d. 97 (C.A. 5 1996); Heard v. Greene, 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed 2d 529 (1998).

47.    The Immigration and Custom Enforcement and Executive Office for Immigration review failed to inform petitioner of his right prior to removal, and the State and County officials withheld all legal correspondence from petitioner to Foreign Embasssia, Consulates, Missions, Legations, and Foreign Affairs Government Departments.   See, United States v. Rangel-Gonzales, 617 F.2d 527 (C.A. 9 1980); Wardon v. I.N.S., 17 F.3d 511 (C.A. 1994); United States v. Calderon-Medina, 591 F.2d 527 (C.A. 9 1979).

## EQUITABLE ESTOPPEL

48.  BIA avoided petitioner international law and constitutional law estoppel argument.  The BIA stated it lacks jurisdiction.  See, Matter of Hernadez-Pumenta, 20 INS Dec 335 (BIA 1991),(Estoppel claim); Matter of U-M, 20 ISN Dec 327 (BIA 1991)(Constitutional).  The Second Circuit presided by former Clerk Roseann Mackechine simply ignored petitioner's procedural and substantive Due Process Claim.  See, Garbending v. I.N.S., 30 F.3d 1187, 1188 n.1 (C.A. 9 1994).  Estoppel is an equitable doctrine invoked to avoid injustice in particular cases.  See, Heckler v. Community Health Services, 467 U.S. 51 (1981).

49.   I.C.E. and DHS are the custodian of petitioner's victimless victims certified immigration files.  The certificate of representation and retainer agreement annexed to the victimless victims suspension of Deportation and cancellation of removal petition showed that Maria Malave, Esq., Eloise Nurse, Esq., Denis Hollisgate-Willkie, Esq., and Apparmore Acambila, Esq., Charmine Brooks attorney admitted in the First and Second Judicial Departments Appellate Division Supreme Court of New York were the attorneys of record and that those attorneys were members of Fox, Stewart, Van stuyvesant and Tate, et. al., Immigration Practice Groups.

-18-

50.  According to the New York County District Attorney indictment under Pre-AEDPA and Pre - Illegal Immigration Reform, and Immigration Responsibility Act Laws most lawful permanent residence in Pre - Illegal Immigration Reform and Immigration Responsibility Act exclusion or Deportation proceedings were not eligible to apply for waiver of exclusion or Deportation regardless of the fact that they have been lawfully domicile in the United States for at least seven (7) years and had not served a term of imprisonment of five (5) years or more for conviction of one or more aggravated felonies.  See, Former I-N-A  Section  211(c)(Repealed  1996).    However, AEDPA  restricted  the availability of INA Section 212(c), relief in Deportation it did not in exclusion and Illegal Immigration Reform and Immigration Reform Act repealed INA Section 212(c), the New York County District Attorney nevertheless stated petitioner committed a scheme to commit Immigration Fraud because his law firm petitioned for 212(c), relief for clients who were in [exclusion] and those who agreed to plead guilty prior to (AEDPA Effective April 24, 1996), and Illegal Immigration Reform and Immigration Responsibility Act effective April 1, 1997, and those permanent residents who would have been eligible for such relief at that time.  See, Immigration & Naturalization Service v. St. Cyr, 553 U.S. 289 (2000).

51.  The District Attorney also alleges that prior to 1996 suspension of Deportation was not codified under the Immigration & Naturality Act for non lawful permanent resident and that the Pre-AEDPA suspension of Deportation and Pre-Illegal Immigration Reform and Immigration Responsibility Act cancellation of removal relief for alien who had continuous physical present in the United States and who did not have a criminal record was a figment of Fox, Stewart, Van Stuyvesant and Tate, et. al., Immigration and a scheme by petitioner to defraud, but See, INA Section 212(a)(2); See, INA Section 240A(b) and 240A(a).

52.  For failure to file fraudulent application for Political Asylum under INA 208 for illegal aliens from Jamaica, Barbados, Trinadad and Tobago, Saint Kitts, Saint Vicent, Saint Lucia, Saint Barlholomew, Hatti, Antigua, Bahamas, Grenada, Turks and Cacois and Nigeria, who are able to return to their countries and have never been prosecuted or have a well founded fear of persecution on account of their race, religion, nationality, membership in a particular social group, or political opinion.

53.  Petitioner was convicted under New York State law for a United States Constitution Article III Federal subject matter Immigration Fraud albeit, a non existing crime fabricated from a whole cloth.  See, Vick Wo v. Hopkins, 118 U.S. 356, 373-74, 6 S.Ct. 1064, 1073, 30 L.Ed. 220, 227-228 (1986); See, Exparte Siebold, 100 U.S. 371, 376-77, 25 L.Ed. 717, 719 (1879); Vuitch v. Hardy, 473 F.2d 1370 (C.A. 4 1973).  New York and States Courts do not have the power to convict petitioner because they did not have jurisdiction.  See, Bulter v King. 781 F.2d 486, 490 (C.A. 5 1986); Lowery v. Estelle, 696 F.2d 333 (C.A. 5 1983); Sunal v. Laege, 332 U.S. 174, 178-79, 67 S.Ct. 1588, 1591, 91 L.Ed. 1982, 1987 (1974).

54.  The law of estoppel has long recognized that a wrong doer should not be permitted to reap unfair advantage from his or her own wrongful conduct.  In the immigration context, estoppel type argument might be raised where a petitioner has relief on a government misrepresentation to his or her detriment or to prevent the government from gaining an unfair advantage from a wrongful act that deprives petitioner of a constitutionally protected liberty or property interest.  In fact, it was the United States Court of Appeals for the Second Circuit explained that the government may be precluded from benefiting from its own wrongful conduct even where the act read in vacuo might suggest a different result.  Cornier-Rodriguez v. I.N.S., 532 F.2d 301 (C.A. 2 1976).                -20-

55.    I.N.S. sub nom I.C.E acted willfully wantonly recklessly and negligently and deceitful in delaying and fraudulently concealing nine (9) separate pre-application for Naturalization filed between 1990 to 1998. See, Yang v. I.N.S., 574 F.2d 171, 174-75 (C.A. 3 1978); Fano v. O'Neill, 806 F.2d 1262 (C.A. 5 1987); Mendoza-Hernandez v. I.N.S., 604 F.2d 631, 639 (C.A. 7 1981).

56.    The traditional elements of equitable estoppel are (a) I.C.E. misrepresentation that local and state officials do not have the authority or jurisdiction to legislate, enforce, prosecute withhold or grant immigration benefits and punishment; (b) I.C.E. had reason to believe that petitioner would rely on it; (c) That it was reasonable for petitioner to rely on the misrepresentation and (d) That petitioner relied on the misrepresentation to his detriment. Heckler, 476 U.S. at 59; See, Haines v. Davidovitz, 312 U.S. 52 (1940); Printz v. United States, 521 U.S. 898 (1997); Gade v. National Solid Waste Management Ass'n, 505 U.S. 88, 109-111 (1992).

57    For almost 14 years I.C.E. New York City District Office has steadfast refused to release petitioner's victimless purported victims immigration certified files.  See, e.g., United States ex rel Accardi v. Shauganessy, 347 U.S. 260 (1954); Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).

## PROCEDURAL DUE PROCESS

58.  The Constitutional foundation for the recent wave of state resistance to congressional compulsion is an automany model of federalism which debuted in the Supreme Court doctrine in New York v. United States, in 1992.  The New York Court declared that while congress may preempt state regulations with direct federal regulation, and may encourage state courts to implement federal policy by offering them positive or negative incentives, congress may not commandeer states by directly compelling them to enact and enforce a federal regulatory program.

-21-

112 S.Ct. 2408 (1992), Justice O'Conner wrote the Court opinion; Justice White, Blackmun and Stevens dissented. In other words even where congress has the authority under the constitution to pass laws requiring or prohibiting certain privates acts, it lack the power directly to compel the states to require or prohibit those acts id. at 2423; while conceding that congress can direct state courts to enforce federal law, the court dismissed this constraint on state authority as Sui genneris, See, id. at 2429-30.

59. The United States Government did not commandeer New York County, City and State to enforce or legislate United States Immigration Law. See, Yesil v. Reno, 92 N.Y. 2d 455 (1998); Bennett v.Goldsmith, 280 N.Y.S. 2d 529 (1 Dept. 1939); See, 28 U.S.C. 1331. The Fifth Amendment Due Process Clause protect against federal government deprivation of life, liberty, or property without fair and adequate procedures. See, Mathew v. Eldrige, 424 U.S. 319 (1976). I.C.E. New York City District Attorney Office Director, and counsel being cognizant of the fact that they were powerless to stop petitioner's private attorney general anti-corruption against their offices made use of the New York County District Attorney in fabricating, as their cat paw to silence petitioner dissident voice, activity and advocacy, for more than 20 years all attempts to railroad petitioner under bogus violations of state law failed 18 U.S.C. and 8 U.S.C. scheme to commit immigration fraud was fabricated from a whole cloth by former A.U.S.A. and A.D.A. John Ryan. See, Matter of M-1 I&N, (BIA 1942); Matter of E.N. 7 I & N, Dec 153 (BIA 1956); See, I.N.A. 212(a)(2),(A)(i); See, Zadvdas v. Davies, 533 U.S. 678 (2001).

## SUBSTANTIVE DUE PROCESS

60. The Fifth Amendments Due Process Clause also protect against Government action infringing upon fundament liberty interest, no matter what process is provided, where the infringement is not narrowly tailored to serve a

-22-

compelling state interest. See, Reno v. Flores, 507 U.S. 292 (1993), id. at 301-302.

61. This fundamental or substantive due process prevents the government from engaging in conduct that shock the conscience, or interferes with rights implicit in the concept of liberty. See, United States v. Salerno, 481 U.S. 739, 746 (1997), quoting Rochine v. California, 342 U.S. 162, 172 (1952).

62. Here I.C.E., DHS, United States District Court and the United States Court of Appeals for the Second Circuit conspired, aided and abetted and schemed with corrupt, unethical incompetent bigots and reprobate in the New York County District Attorney's Office, Unified Court System of New York, Prison Parole Division and Hospitals to murder petitioner under Federal Immigration and State Laws. As the Supreme Court stated recently this constitutional concern, itself harkening back to the Magna Carta arises out of the basic unfairness of depriving citizens of life, liberty, or property through the application not of law and legal process, but arbitrary coercion. BMW Of North America v. Gore, 517 U.S. 559 (1996); Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 17 (1976); Majica v. Reno, 970 F.Supp 130, 169-191 (E.D.N.Y. 1997), aff'd sub. npm.; Henderson v. I.N.S., 157 F.3d 106 (C.A. 2 1998).

## EQUAL PROTECTION CLAUSE

63. In a Published Report See, Exhibit "L" on April 15, 2010, the New York Law Journal on page 1 and 7 touted in a headline: **NEW YORK STATE ATTORNEY GENERAL ANDREW CUOMO CLOSURE OF ESTELA FIGUER 10, BOILER ROOM IMMIGRATION PRACTICE, COMPANIES VICTIMIZED IMMIGRATION. MS. FIGUERIO IS NOT A LAWYER AND DID NOT EMPLOYED LAWYERS.** She was the owner of America Immigration Federation and five companies related, to have allegedly defrauded over 70,000 aliens, reached a civil settlement and agreed to pay 1.2 Million in restitution. **Fox, Stewart, Van Stuyvesant & Tate et. al,** had 1500 counsels admitted to practice law in every state and more than 75 countries.

Petitioner was the only non citizen lawyer charge with a crime even though he was not the partner in charge of the Immigration Law Practice Groups, the attorney of record or had any contact with the victimless victims.

64.    Where the Equal Protection Clause of the Fourteenth Amendment applies only to the State, the Fifth Amendment's of Due Process Clause also has been interpretated to bar abitrary discrimination by the Federal Government. Thus, certain irrational distinction between similarly situated non citizen made by the Federal deportation Laws or how the Federal Government applies these laws may be found unconstitutional.   See, e.g., Dillingham v. I.N.S., 267 F.3d 996 (C.A. 9 2001); Yeung v. I.N.S., 76 F.3d 337 (C.A. 11 1995); Francis v. I.N.S., 552 F.2d 268 (C.A. 2 1976).

65.    The City of New York actually rewarded Denis Holliegate-Willkie, a former counsel of Fox, Stewart, Van Stuyvesant and attorney of record for Jean Solomon with a position as an Assistant Corporation Counsel Department of Law.   Apparmore Agambila, Esq., Maria Malave, Esq., and Charmain Brooks, Esq., were rewarded with petitioner's former firm New York City Worth Street Office clients.   None of the attorneys of record for the victimless victims who actually collected legal fees, and executed certificate of representation were arrested, prosecuted, indicted, convicted or disbarred because they are citizens.   Those attorneys continued to enjoy the fruit of petitioners alleged crimes.

66.    Petitioner clients, these were the attorneys of record who names appeared on all certificate of representation they continued to represent and collect fees from the same alleged victims who claimed to have been victimized by those attorneys.

-24-

## NATURALIZATION CLAUSE

67. Petitioner as a non citizen was subjected to more adverse Immigration consequences than citizens and non citizens in New York and across the United States for a non aggravated felony or moral turpitude. Such disparate treatment violates the constitution's naturalization clause which requires a uniform rule of naturalization and hence Deportation law. See, Point III in brief of the American Bar Association as Amicus Curiae in Lopez v. Gonzales, 127 S.Ct. 625 (2006).

## ALIENAGE

68. Petitioner is a Stateless Citizen, a refugee granted political asylum and permanent resident. He is a National of the United States. See, I.N.A. 101(a),(3) defining an alien as any person not a citizen or a National of the United States and 101(a)(22) defining a National as (a) A Citizen of the United States, or (b) A person thought not a Citizen of the United States owes permanent allegience to the United States.

69. Petitioner took formal steps nine separate times by applying for Citizenship. He took the affirmative steps to declare allegiance by protecting, respecting and obeying the Constitution and Laws of the United States and prevented those individuals who had attempted with the assistance of the New York County District Attorney Office scheme to use forged documents and false testimonies to defraud the United States of its Immigration benefits. See, United States v. Morin, 80 F.3d 124 (C.A. 4 1996); cf. Hughes v. Ashcroft, 255 F.3d 752 (C.A. 9 2001) and Oliver v. I.N.S. 418, 517 F.2d 426 (C.A. 2 1975).

## NATURALIZATION RETROACTIVE

70. Although challenges to retroactive Deportation Laws under the Ex Post Facto Clause only applies to criminal punishment. The new mandatory imposition of civil penalty of removal upon "Conviction" suggest that petitioner is entitled to retroactive naturalization.

-25-

See, Eastern Enterprise v. Apfel, 524 U.S. 498 (1988); See, Scheiderman v. I.N.S., 83 F.3d 1521, 1527 (C.A. 3 1996)(Sorkin J, concurring) "If Deportation under such circumstance is not punishment it is difficult to envision what is.

71. Congressional Private Bill And Executive Pardon are remedies of last resort. See, I.N.A. 237(a)(2),(A)(V).

### Declaratory Judgment

Section 360(a) of the Immigration and Nationality Act of (1952) 8 U.S.C.A 1503(a) permits, with certain restrictions a person who claim that his right as a National have been denied to institute a Declaratory Judgment action for a Declaration of Citizen in contrast to its predecessors, 8 U.S.C. 1503(a) permits action only to Nationals who are in the United States, it precludes an action where the issue of status arose in connection with exclusion proceedings, and includes a five year statute of limitation, it applies only where there has been a final administrative denial of a right or privilege generally accorded to Citizens. Se, Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L Ed 1320 (1939); Vance v. Terrazas, 444 U.S. 252, 100 S.Ct. 540, 62 L.Ed 2d 461 (1980); See, Section 360(a) of the 1952 Act, referring to it by its codification at 8 U.S C.A. Section 1503(a).

72. Petitioner is within the United States. See, Bensky v. United States, 391 F.3d 894 (C.A. 7 2004). Petitioner issue of status did not arise in a 2003 proceeding, it arose almost 14 years before the 2003 final order was entered by the Executive Office for Immigration review. The board of Immigration appeal did not addressed this issue which has been avoided by the judges, Court Clerks and Court Attorneys in the United States Court of Appeals for the Second Circuit who are in the pocket of former New York County Assistant District Attorney John C. Ryan, et. al.

See, North v. Rooney, 2003 WL 21432590 (D.N.J. 2003); Rios-Valenzuelva v. Department of Homeland Security, 506 F.3d 393 (C.A. 5 2007).

73.    This Court has Jurisdiction under 8 U.S.C.A. 1503(a).    Any claim petitioner did not exhaust administrative remedy is negated by the doctrine of equitable estoppel.    See, Fano v. O'Neill, 806 F.2d 1262 (C.A. 5 1987); Villena v. Immigration & Naturalization, 622 F.2d 1352 (C.A. 9 1980); Galvez v. Howerton, 503 F.Supp 35 (C.D. Cal. 1980); See, e.g., In Petition For Naturalization Of Tubig On Behalf Of Tubig, 599 F.Supp 2 (N.D Cal 1981); Markowski v. Ashcroft, 66 Fed Appx 374 (C.A. 2003); Mauting v. I.N.S., 16 Fed Appx 788 (C.A. 9 2001).

74.    This Petition should not be concluded by Summary Judgment in favor of the Government where the issues of fact are still to be determined.    See, Rivera v. Albright, 200 WL 1514075 (N.D. ILL 2000); Schaif v. United States Attorney General, 597 F.2d 1240 (C.A. 9 1979).

75    In this case at bar, it is the United States Department of Homeland Security Immigration and Custom Enforcement Bureau, The United States District Court Southern District of New York, The United States Court of Appeals for the Second Circuit, The Executive Office of Immigration Appeal Private Judging and Independent Ad Hoc Laws which are not codified in the Immigration and Nationality Act, and Title 8 United States Code Annonated and the Code of Federal Regulation (C.F.R.) that were responsible for precluding petitioner's Citizenship which is unconstitutional.    See, Aguayo v. Christopher, 865 F.S. 474 (N.D. ILL 1994).

76.    Petitioner is afforded additional protection where the Immigration and Nationality As act a Refugee.    The I.N.A. only allows one with "Refugee Status" to be removed under limited circumstances.

-27-

The "Refugee Status" coexists with lawful permanent resident (LPR) status, providing additional protection and petitioner cannot be removed even if he is legitimately convicted of a real existing jurisdically sound crime that could withstand a constitutional test under the I.N.A. for cancelling refugee status is met.

77.  Refugee status coexist with LPR status and must be terminated through a specific statutory process before a refugee can be removed begins with the 1967 United Nations protocol relating to the status of refugees.  19 U.S.T. 6223, T.I.A.S. NO. 6577 ("The Protocol").  The United States is a party to the protocol which incorporates by reference Article 2 through 34 of the 1951 United Nations Convention Relating to the status of Refugee, 19 U.S.T. 6259, 189 U.N.T.S. 150 ("The Convention"); See, I.N.S. v. Aguirre-Aguirre, 526 U.S. 415, 427, 119 S.Ct. 1439, 143 L.Ed 2d 590 (1990) and incorporates the definition of the term "Refugee" found in Article I of the Convention.  See, Article 1(1) and (2).

78   Under Article 1 of the Convention entitled "Definition of the term Refugee," one cease to be a refugee if any of six events occur.  See, Convention Article 1(c).  In the case of a refugee in petitioner's situation refugee status would not cease until "He has acquired a new Nationlity and enjoys the protection of the Country of his new Nationality. id. 1(c)(3)."

79.  The United Nation high Commissioner for Refugees has taken the position that this provision means that the Refugee must secure and able to exercise all rights and benefits entitled by possession of the Natioinality of the Country" before losing Refugee status, and because L.P.R. status does not entitle one to the same rights and benefits as a United States National obtaining L.P.R. status is not a basis for the cessation of Refugee status under the Convention.

-28-

See, Interpreter Release "Becoming L.P.R. Doe Not Terminate Refugee Status, under says," so No. 11 Inter. Rel. 413 App (2003)(Statement from Office of the United Nations High Commissioner for Refugees).

80.  Accorded the Convention contemplates petitioner as a Stateless Citizen if he is not a National of the United States him retaining Refugee status even after he achieved L.P.R. status did not give him a "New Nationality" that would terminate the need for Refugee status under the Convention.

81.  The Refugee Act of 1986 94 Stat 102 brought into existence the current definition of "Refugee" in the I.N.A.  See, 8 U.S.C. 1101(a)(44)(A).  The Supreme Court has instructed that "If one thing is clear from the legislative history of the definition of "Refugee" and the entire 1980 (Refugee) Act, is that one of Congress" primary purpose was to bring United States Refugee Law into conformance with the 1967 United Nations protocols relating to the status of Refugee.  I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 436, 107 S.Ct. 1027, 94 L.Ed 2d 434 (1987).

82.  The 8 United States Code Section 1101(a)(42)(A) defines a "Refugee" as any person who is outside any country of such person's Nationality or, in the case of a person having no Nationality is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that  country  because  of  persecution  on  account  of  race,  religion, nationality,  membership  in  a  particular  social  group,  or  Political opinion...id.  "Refugee is used in many sections of the I.N.A.  See, 8 U.S.C 1157(c)(1), which authorized the Attorney General of the United States and not (The New York County District Attorney) in his or her discretion and pursuant to such regulations as [He or She] may prescribed to admit a limited number of Refugees annually.

-29-

83.   Refugees admitted under 8 U.S.C. 1157 may become lawful permanent resident after one year to 8 U.S.C. 1159(a), the key statutory provision at issue here.  This section permitting Refugees who qualify being "Regarded as lawfully admitted to the United States for permanent residence (after one year). id. Section 1159(a)(2)(emphasis added)," and does not explicitly provides for the termination of Refugee status upon being "Regarded As" a lawful permanent resident.  The absence of language terminating Refugee status in Section 1159(a) is consistent with the definition of Refugee found in section 1101(a)(42)(A), which does not indicate any particular time when one ceases to be a Refugee.

84.   A Refugee may be "Regarded As" a lawful permanent resident after one year.  See 8 U.S.C. 1159(c)(1); 8 C.F.R. Section 207.7, allow the family members of a "Refugee" under some circumstances to obtain derivative Refugee status if they apply within two years of the principal refugee's admission, thereby utilizing the principle allows Refugee status even after he or she received LPR status is another example that contemplates Refugee status persisting after lawful permanent resident status is obtained.

85.   Congress and the Department of Homeland Security through its (Implementing Regulations) have explicitly provided for a means of removing Refugee status consistent with the principal under 8 U.S.C. 1157(c)(4), the Attorney General may terminate "The Refugee Status of any Alien pursuant to such regulation as the Attorney General may prescribe if the Attorney determines that the alien was not in fact a Refugee.....at the alien's admission. id."

86  The implementing regulations for that section further requires that the Refugee given "Notice in writing" of the Government's intent to "Terminate the Alien Refugee Status" along with a 30 days in which to prepare evidence

to be presented at a hearing to show cause "why the alien's refugee status should not be terminated. See, 8 C.F.R. Section 207.9."

87. Had Congress sought to remove refugee status for aliens who have become lawful permanent resident under Section 1159(a)(1), it could have explicitly provided for removing that status as it did in Section 1157(c)(4). See, In Matter of Medrando, 20 I&N, Dec 216 WL 385765 (BIA 1990), See, 8 C.F.R. Section 245 a-2(u)(2).

88. Under the Convention every refugee has a duty to the Country in which he finds himself which requires in particular that he conforms to its laws and regulations, convention, Article II, but notes that the violation of any criminal law is not in and of itself grounds for terminating refugee status under that agreement.

89. While Petitioner should be liable for violation criminal laws in the same manner as a United States Citizen would be, congress in implementing the protocol intentionally limited the grounds for cancelling refugee status because it intended to give refugees heightened protection (as compared to other aliens) in light of the trumatic conditions they have fled. See, Criminal Procedure Law motion filed August 16, 2010, New York City Criminal Court. See, Exhibit "M," demand regarding a non existing forfeiture made upon New York County District Attorney, Cyrus Vance Jr., September 2010.

90. The Government of the United States did not even attempt to cancel petitioner's refugee status under Section 1157(c)(4) or followed the procedures outlined under 8 C.R.F. Section 207.9 for doing so because the Government does not have any legal standing. But here since 1980 the New York City District Attorney Office of Immigration and Naturalization Services sub. nom., Department of Homeland Security, Immigration and Custom Enforcement in practice.

-31-

However, has violated all sources of Domestic Law, including the I.N.A. and its supporting regulations, administrative and judicial case law, and the practice of ICE, The Department of Homeland Security and The Executive Office for Immigration review reasons that when a "Refugee" adjust to lawful permanent resident status, he can either maintains his LPR status and may be subsequently Naturalize to United States Citizenship.

91.    Instead starting from 1981 these entities have aided and abeited Mr. John C. Ryan, et. al., in the scheme to Deport petitioner by fraud and fraudulently concealed the award of Political Asylum, Refugee Status, Permanent Resident and refused to process nine separate pre-paid Naturalization applications.    See, 8 U.S.C. 1227.    No provision of the Immigration and Nationality Act (INA) confers any authority on ICE or the Department of Homeland Security to engage in the sort of termination process and to fraudulently conceal probative exculpatory evidence which is the certified Immigration files of the illegal aliens used by the New York County District Office and Unified Court System of New York State to fabricate from a whole cloth a non existing crime which was used in a pretextual, malicious, vindictive persecution to trigger removal in retaliation against protective First Amendment activities and advocacy.

## CONCLUSION

92.    The Federal Government of the United States of America ordered the Department of Justice to sue Arizona because of that State's ultra vires decision to enact its own Immigration Law.    United States Constitution Article 1 Clause 8 gives the Federal Government Jurisdiction over Immigration and Nationality Act codified under Title 8, of United States Code Annotated, and Code of Federal Regulation.

-32-

93. The state of New York and the County of New York District Attorney alleges that illegal and undocumented aliens have the right to use fraud and forged documents and false affidavits to obtain Immigration relief in New York because New York City is a safe harbor, and that even though petitioner as a partner does not practice Immigration Law, he was responsible for **Fox, Stewart, Van Stuyvesant & Tate** et. al. standard policy of not aiding and abetting or conspiring with illegal aliens in obtaining Immigration relief by using false affidavits, forged documents or sham marriage.

94. United States Magistrate Judge Debra C. Freeman, United States District Judge Court of Appeals for the Second Circuit agrees with New York that the state has jurisdiction and petitioner does not have the right to be protected under the Constitution of the United States and the Bill of Rights does not apply to him.

95. Immigration Law is a very complex and exotic law. Most experienced lawyers will not touch it because they do not understand it. If the law clerk or judge assigned to this matter does not understand or have no experience in this body of law, the ethical, moral and honest thing to do will be for those individuals to recuse themselves. If this matter cannot be adjudicated on the merit, a recusal is in order and transfer to another venue is the ethical thing to do because petitioner is fed up with private judging by law clerks and judges who are not even qualified to sit and pass judgment due to their inability to provide honest service. See, Exhibit "N," New York Civil Practice Law and Rules ("CPLR") Article 78 Petition. See Exhibit

O 28 USC 1651 (a) Letter to CUSDJ L Preska.

Respectfully submitted,

Curtis Van Stuyvesant
Political Prisoner 99-A-4590
Attica Correctional Facility
639 Exchange Street
Post Office Box 149
Attica, New York 14011-0149

Dated: Nov 8 2010

-33-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
==========================================
CURTIS VAN STUYVESANT

                    Petitioner                    Docket No.

            vs.                                   ALIEN NO. A024-353-326

                                                  VERIFICATION 28 U.S.C. 2241
ERIC HOLDER UNITED STATES                         PETITION FOR A WRIT OF HABEAS
ATTORNEY GENERAL, et. al.                         CORPUS EXECUTIVE DETENTION

                    Respondents.
==========================================
STATE OF NEW YORK)
COUNTY OF WYOMING)
TOWNSHIP OF ATTICA)

    I CURTIS VAN STUYVESANT, being duly sworn deposes and says:  I have read

the foregoing 28 U.S.C. 2241 Petition for Habeas Corpus Executive Detention

Petition and Affirmation In Support and hereby verify that the matters

alleged therein are true, except as to matters alleged on information and

belief and as to those matters I believe them to be true.  I certify under

penalty of perjury that the following is true and correct.

                                        Respectfully submitted,

                                        Curtis Van Stuyvesant
                                        Political Prisoner 99-A-4590
                                        Attica Correctional Facility
                                        639 Exchange Street
                                        Post Office Box 149
                                        Attica, New York 14011-0149

Executed and Sworn to on the 8 day of Nov , 2010.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
=========================================
CURTIS VAN STUYVESANT

                Petitioner          Docket No.

          vs.                    AFFIRMATION OF SERVICE
                                28 U.S.C. 2241 PETITION
                                FOR A WRIT OF HABEAS CORPUS
ERIC HOLDER, UNITED STATES      EXECUTIVE DETENTION
ATTORNEY GENERAL, et. al.,
=========================================
STATE OF NEW YORKO
COUNTTY OF WYOMING)
TOWNSHIP OF ATTICA)

    I CURTIS VAN STUYVESANT, being duly sworn deposes and says: I affirmed under the penalty of perjury that on the date executed below I served a true and exact copies of the annexed Petition, Affirmation In Support and Appendix of Exhibits and Informa Pauperis application in a 28 U.S.C. 2241 Petition for a Habeas Corpus regarding Executive Detention upon the individuals listed below in a pre-paid first class mail postage wrapper which was deposited in the mailbox provided by Attica Correctional Facility, 639 Exchange Street, Post Office Box 149, Attica, New York 14011-0149 for delivery by United States Post Office to:  Honorable J. Michael McMahon, Clerk of the Court, United States District Court Southern District of New York, Daniel Patrick Monyihan, United States Courthouse 500 Pearl Street, New York, New York 10007; Honorable Janet Napolitano, United States Secretary, Department of Homeland Security, Washington, D.C. 70528; Honorable Eric Holder, United States Attorney General, Department of Justice Immigration Litigation Unit, 950 Pennsylvania Avenue N.W. Washington, D.C. 20530-0001.

-1-

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED #: 4/27/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CURTIS VAN STUYVESANT,

            Petitioner,

      -against-

JAMES CONWAY, Superintendent,
Attica Correctional Facility,

           Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

03 Civ. 3856 (LAK)

## ORDER

LEWIS A. KAPLAN, *District Judge.*

       Petitioner's motions for relief from the judgment that dismissed his habeas petition are denied, substantially for the reasons set forth in the report and recommendation of Magistrate Judge Debra Freeman. If a certificate of appealability is required, it is denied for want of any serious appellate issue. Any appeal herefrom would not be taken in good faith within the meaning of 28 U.S.C. § 1915. The Clerk shall close the case.

       SO ORDERED.

Dated:      April 26, 2010

                                 Lewis A. Kaplan
                       United States District Judge

A (1)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED #: 12/16/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CURTIS VAN STUYVESANT,

              Petitioner,

         -against-

JAMES CONWAY, Superintendent,
Attica Correctional Facility,

              Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

03 Civ. 3856 (LAK)

## ORDER

LEWIS A. KAPLAN, *District Judge.*

        Petitioner moves for an order, pursuant to Fed. R. Civ. P. 60(b)(3), (4) and (6), vacating the judgment entered on the order, dated September 7, 2006, which denied his petition for a writ of habeas corpus. The motion is accompanied by a 41-page affirmation, a 106-page memonraudm of law, a copy of a 44-page petition to the Supreme Court for a writ of certiorari, copies of executive clemency papers, and assorted other materials.

        The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides, in relevant part, that "[b]efore a second or successive application [for a writ of habeas corpus by a state prisoner] permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). While petitioner styles the present application as a Rule 60(b) motion, the Court of Appeals has made clear that Rule 60(b) relief "is available with respect to a previous habeas proceeding only when the Rule 60(b) motion attacks the integrity of the habeas proceeding and not the underlying criminal conviction." *Harris v. United States,* 367 F.3d 74, 77 (2d Cir. 2004). Moreover, Rule 60(b) relief is not available even in non-habeas cases as a substitute for direct appeal. *Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir. 1986).

        In this case, petitioner attacks the integrity of the underlying conviction and complains also about alleged errors in the consideration of his petition. To the extent the motion attacks the underlying conviction, this Court lacks authority to consider it absent leave of the Court of Appeals. To the extent it complains of matters that were or might have been raised on direct appeal from the denial of his habeas petition, his complaints are foreclosed by the Court of Appeals' affirmance of that judgment.

        Accordingly, the motion is denied in all respects. The denial is without prejudice to a motion before the Court of Appeals for leave to file a second or successive petition for a writ of habeas corpus to the extent that petitioner attacks the underlying criminal conviction.

        SO ORDERED.

Dated:       December 16, 2008

                               Lewis A. Kaplan
                            United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

CURTIS VAN STUYVESANT,

                   Petitioner,

           -against-

JAMES CONWAY, Superintendent,
Attica Correctional Facility,

                   Respondent.
-------------------------------------------------------------X

:      03 Civ. 3856 (LAK) (DF)

:      **REPORT AND**
:      **RECOMMENDATION**

**TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:**

By two motions dated November 18, 2009 (Dkts. 52, 53), *pro se* petitioner

Curtis Van Stuyvesant ("Petitioner") again seeks relief from the 2007 judgment of this Court

(Kaplan, J.) that dismissed his habeas corpus petition in its entirety (*see* Dkts. 30, 32).

Petitioner's prior appeal from that judgment was denied (*see* Dkt. 35), as was his application for

rehearing by the Second Circuit (*see* Dkt. 36), his later motion to this Court to vacate the

judgment (*see* Dkts. 37, 38), his motion to reconsider the denial of the motion to vacate (*see*

Dkts. 40, 41), and his appeal from this Court's denial of both the motion to vacate and the

motion for reconsideration (*see* Dkts. 44, 51). Once again, Petitioner's efforts to set aside this

Court's judgment should be rejected.

## DISCUSSION

Currently pending before the Court are two separate motions filed by Petitioner: first, a

motion pursuant to Fed. R. Civ. P. 60(b) to vacate the Court's prior judgment[1] and, second, a

---

[1] *See* "Notice of Motion Pursuant to Federal Rules of Civil Procedure Rule
60(b)(1)(2)(3)(4)(5)(6) To Vacate Judgment," dated Nov. 18, 2009 (Dkt. 52); *see also*
"28 U.S.C. 2254 Affirmation in Support of Notice of Motion To Vacate Void Judgement



motion pursuant to both Fed. R. Civ. P. 60(b) and Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts, seeking discovery.[2]  On these motions, Petitioner primarily appears to argue that (1) he should be entitled to discovery, so as to obtain the "new evidence" that, in his view, would demonstrate his innocence (*see* First Pet. Aff., at ¶¶ 19-44; Second Pet. Aff., at ¶¶ 8-10); (2) the prior judgment of this Court, dismissing his habeas petition, was procured by fraud, in that, *inter alia*, the head of the Court's *Pro Se* Office concealed or withheld from the Court's consideration materials that Petitioner had duly filed (*see* First Pet. Aff., at ¶¶ 45-67); and (3) the Court's judgment dismissing Petitioner's habeas petition ignored the record of the state proceedings, was erroneous as a matter of law, and should be considered void (*see id.*, at ¶¶ 10, 68-133).

The Court, however, has already made clear that, under the law of this circuit, "Rule 60(b) relief 'is available with respect to a previous habeas proceeding only when the Rule 60(b) motion attacks the integrity of the habeas proceeding and not the underlying criminal conviction.'" (Order, dated Dec. 16, 2008 (Dkt. 38) (citing *Harris v. United States*, 367 F.3d 74, 77 (2d Cir. 2004)).)  Accordingly, to the extent Petitioner continues to challenge the validity of his conviction, his new Rule 60 motions must again be denied. (*See id.* ("To the extent [Petitioner's motion] attacks the underlying conviction, this Court lacks authority to consider it absent leave of the Court of Appeals.").)

---

Pursuant to Federal Rules of Civil Procedure 60(b)(1)(2)(3)(4)(5)(6)," dated Nov. 18, 2009 ("First Pet. Aff.") (attached to Dkt. 52).

[2] *See* "Notice of Motion Pursuant to 28 U.S.C. 2254 Habeas Corpus Rule 6 Federal Rules of Civil Procedure 60(b)(1)(2)(3)(4)(5)(6)," dated Nov. 18, 2009 (Dkt. 53); *see also* Affirmation in Support [of] Notice of Motion Pursuant to 28 U.S.C. 2254 Habeas Corpus Rule 6 Federal Rules of Civil Procedure 60(b)(1)(2)(3)(4)(5)(6)," dated Nov. 18, 2009 ("Second Pet. Aff.") (attached to Dkt. 53).

2

As for his challenges to the integrity of the habeas proceeding, Petitioner's arguments are almost entirely general and conclusory. The one specific argument he raises relates to the conduct of this Court's *Pro Se* Office, which he accuses of deliberately withholding documents that he filed long before the date reflected by the Court's Docket.[3] In particular, Petitioner points out that he filed a Traverse in 2003, but that it was not docketed until 2007, shortly before this Court issued a Report and Recommendation on the merits of Petitioner's habeas claims. According to Petitioner, "[i]t will strain incredulity to a breaking point, and not even the proverbial village idiot will believe that the Traverse was subjected [to the Court] for review." (First Pet. Aff., at ¶ 7.) What Petitioner fails to note, however, is that, regardless of the docket date, this Court plainly had the Traverse before it at the time it issued a recommendation as to Petitioner's claims, and in fact referred repeatedly to the substance of the Traverse in its report. (*See* Report and Recommendation, dated July 9, 2007 ("7/9/07 R&R") (Dkt. 24), at 34, 40, 48 n.24, 59 n. 32, 60, 76 n.38.)[4] Furthermore, to the extent Petitioner complains that the Court did not pay sufficient attention to the arguments set forth in his Traverse, he raised this same concern in his prior Rule 60(b) motion (*see* Dkt. 37 ("Affirmation in Support of Notice of Motion Pursuant to F.R.C.P. Rule 60(b) Subsections 3, 4, & 6," dated Oct. 2, 2008, at 8 (complaining that the Court had made only "a passing reference" to the Traverse))), which the Court denied – and the denial of which was upheld on appeal.

---

[3] Petitioner also accuses the *Pro Se* Office of forging the signatures of both the undersigned and Judge Kaplan on Orders of the Court. (*See* First Pet. Aff., at ¶ 8.) As far as this Court can discern, there is absolutely no basis for this accusation.

[4] Based on the docketing date, it is likely that the *Pro Se* Office initially sent the Traverse directly to this chambers, and that this Court sent it to the Docket Clerk for docketing shortly before issuing its Report and Recommendation.

To the extent Petitioner seeks discovery, his motion should be denied as procedurally improper and without basis. In an apparent attempt to satisfy the requirements of Rule 60(b)(2) (which permits a judgment to be vacated based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"), Petitioner argues that he needs discovery to uncover the "new evidence" that will, in turn, demonstrate his innocence and hence his need for relief from the Court's judgment on his habeas petition. No proceedings in this action are currently pending before this Court, however, and Petitioner has not made an adequate showing as to why, in the absence of a pending proceeding, this Court should order discovery. In any event, there is nothing "new" about the evidence Petitioner seeks – i.e., the immigration files of the victims of his crimes. (See First Pet. Aff., at ¶¶ 19-44; Second Pet. Aff., at ¶ 9.) Not only was Petitioner previously aware of this evidence, but it was the subject of the Brady claim he raised in his petition. (See 7/9/07 R&R at 31-34 (addressing Petitioner's claim that the prosecution had failed to produce immigration documents relating to Petitioner's former clients).) The Court found that claim to be without merit because, inter alia, Petitioner was unable to show that the documents at issue were likely to be "favorable" and "material" to his criminal defense. (See id.) For the same reasons, Petitioner has not shown that this evidence, if obtained, would justify vacating the Court's prior judgment.

Finally, to the extent Petitioner raises any additional arguments that could have been raised in his appeal from this Court's judgment denying his habeas petition, the Court has already noted that such arguments "are foreclosed by the Court of Appeals' affirmance of that judgment." (Dkt. 38.)

4

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Petitioner's pending motions (Dkts. 52 and 53) be denied in all respects.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, United States Courthouse, 500 Pearl Street, Room 1310, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. FAILURE TO FILE OBJECTIONS WITHIN 14 DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
        March 15, 2010

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

